UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AUBREY JENEE BRICKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-276-P |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is affirmed.

I.  Administrative History and Final Agency Decision

Plaintiff filed her applications for DIB and SSI on October 27, 2017. AR 13. Plaintiff alleged she became disabled on February 25, 2017. *Id.* The Social Security Administration denied Plaintiff's applications on February 20, 2018, and on

reconsideration on April 9, 2018. AR 89, 91-100, 101, 103-112, 114, 116-30, 131, 133-47.

Plaintiff appeared with a non-attorney representative and testified during an administrative hearing before an Administrative Law Judge ("ALJ") on December 18, 2018. AR 41-71. On March 13, 2019, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Social Security Act from February 25, 2017 through the date of the decision. AR 148-170. On January 31, 2020, the Appeals Council vacated the decision and remanded the matter back to the ALJ directing him to consider evidence submitted on December 7, 2018. AR 178-79.

Thereafter, Plaintiff appeared with a non-attorney representative and testified during a second administrative hearing before the ALJ on June 9, 2020. AR 72-88. A vocational expert ("VE") also testified. AR 84-87.  On July 9, 2020, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Social Security Act from February 25, 2017 through the date of the decision. AR 9-33.

Following the agency's well-established sequential evaluation procedure, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 25, 2017, the alleged onset date. AR 15. At the second step, the ALJ found Plaintiff had the following severe impairments: substance abuse disorder (alcohol, marijuana, nicotine), depression, anxiety, and posttraumatic stress disorder. *Id.* At the third step, the ALJ found that her impairments were not *per se* disabling as Plaintiff did not

have an impairment or combination of impairments meeting or medically equaling

the requirements of a listed impairment. AR 16.

At step four, the ALJ found that Plaintiff had the residual functional capacity

("RFC") to perform the full range of medium work. AR 18-19. Additionally,

Plaintiff had non-exertional limitations, including being limited to work that is SVP

level 2 or less, understanding, remembering, and carrying out only ordinary and/or

routine written or oral instructions and tasks, interacting occasionally with

supervisors and coworkers, and not interacting with the public. AR 19.

At step five, the ALJ, relying on the VE's testimony, determined Plaintiff

could perform the following jobs existing in significant numbers in the national

economy: laundry worker I, warehouse worker, hospital cleaner, dishwasher, janitor,

and floor waxer. AR 31-32. As a result, the ALJ concluded Plaintiff had not been

under a disability, as defined by the Social Security Act, from February 25, 2017

through the date of the decision. AR 13, 33.

The Appeals Council denied Plaintiff's request for review, and therefore the

ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.981; *Wall

v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

II.  Issues Raised

On appeal, Plaintiff raises three issues. First, Plaintiff argues the ALJ's RFC

determination is not supported by substantial evidence. Doc. No. 13 ("Op. Br.") at

6-8. Second, Plaintiff contends the ALJ did not properly consider her subjective reports. *Id.* at 8-12. Third, Plaintiff asserts the ALJ erred in his consideration of the VE's testimony. *Id.* at 12-13.

III.  General Legal Standards Guiding Judicial Review

Judicial review of Defendant's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [a court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, quotations, and brackets omitted). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (quotations omitted). While a court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, a court does not reweigh the evidence

or substitute its own judgment for that of the defendant. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

IV.  RFC Determination & Consistency Evaluation

Plaintiff argues the ALJ erred by failing to include certain limitations in the RFC. Specifically, she asserts that she is physically unable to perform medium work. She also argues the ALJ should have included a necessity for vocational support, in the form of a job coach or extra supervision, and the need to miss more than one day of work per month.

With regard to Plaintiff's ability to perform medium work, she states, "Plaintiff [] does not agree that she can perform the demands of medium work (lifting up to 50 pounds[)]. There is clearly no evidence in the record to back up that finding." Op. Br. at 6. However, Plaintiff never asserted at any point in the application process that she suffered from physical limitations. Indeed, at the administrative hearing, Plaintiff's representative affirmed that Plaintiff's limitations were non-exertional only.

ALJ: Counsel is this all non-exertional?

REP: The physical - - oh, I'm sorry. Yeah. I believe that the limitations are non-exertional.  The only thing physical is really some stomach pain that sounds like that's a lot better now. So, yeah, I believe it's all - -

ALJ: Okay.

REP: - - non-exertional.

AR 50. *See Chrissos v. Astrue*, No. CIV 09-0704 KBM, 2010 WL 11622651, at *2, 10 (D.N.M. May 7, 2010) ("Because there are no allegations of a physical limitation or restriction [the plaintiff has the RFC to perform a full range of work at all exertional levels, and thus,] the analysis concerns only Plaintiff's mental limitations." (citing Social Security Ruling ("SSR") 96-8p)).

Also with regard to the RFC, Plaintiff contends the ALJ erred by not including the necessity for her to miss work more than one day per month. She asserts that she would inevitably miss multiple days of work each month due to doctor appointments and therefore, the ALJ should have included this circumstance in the RFC. Plaintiff argues she had 101 appointments with either medical physicians or mental health professionals over the course of five years and this would preclude employment. Op. Br. at 7-8.

Various courts have rejected Plaintiff's argument. As Defendant notes, the vast majority of Plaintiff's medical visits are single counseling sessions or medication refill appointments. AR 486-88, 489-91, 492-94, 495-97, 498-500, 501-03, 504-06, 507-09, 510-12, 525-26, 530-31, 535-36, 537-38, 539-40, 541-42, 546-47, 548-49, 550-52, 556-57, 558-59, 560-61, 563-65, 566-67, 568-69, 573-74, 575-76, 577-78, 582-83, 662-63, 664-65, 666-67, 668-69, 670-72, 673-74, 675-76, 677-78, 679-80, 681-83, 684-85, 686-87, 688-89, 690-91, 692-94, 695-96, 697-98, 699-700, 701-02, 703-05, 706-07, 708-09, 710-11, 715-16, 717-18, 719-21, 722-23, 724-

26, 727-28, 729-31, 732-33, 734-35, 736-37, 738-39, 741-42, 743-44, 745-46, 747-48, 751-53, 903-04, 905-06, 907-08, 909-10, 911-12, 913-14, 915-16, 917-18, 919-21, 923-25, 935-36, 1037-38, 1039-40, 1041-42, 1043-44, 1045-46, 1047-48, 1049-50, 1051-52, 1053-54, 1055-56, 1057-58, 1059-60, 1061-62. It is wholly unclear why single session counseling appointments or appointments with a primary care physician regarding medication refills would require Plaintiff to miss an entire day of work. Plaintiff's argument "simply assume[s] that she would be required to miss an entire work day for her appointments, rather than recognizing that her work schedule could be adjusted around those appointments." *Ewing v. Astrue*, No. CIV–11–1200–C, 2012 WL 2450847, at *2 (W.D. Okla. June 27, 2012) (affirming ALJ's decision wherein he determined that the plaintiff's need for additional medical treatment would not preclude her from engaging in employment (citing *Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000)).

In any event, as noted, courts have repeatedly rejected similar arguments in Social Security appeals. *See Razo v. Colvin*, 663 F. App'x 710, 717 (10th Cir. 2016) (finding the ALJ did not err by failing to include absenteeism due to medical appointments in the RFC, explaining that medical appointments do not "mean he could not perform work on a regular and continuing basis. To be able to perform work on a 'regular and continuing basis,' *see* 20 C.F.R. § 404.1545(b) & (c), one need not keep a particular work schedule. Rather, work 'on a regular and continuing

basis . . . means 8 hours a day, for 5 days a week, or an equivalent work schedule.'"

(quoting SSR 96–8p, 1996 WL 374184, at *1, 2 (1996)); *Barnett*, 231 F.3d at 691

(finding the ALJ did not err by failing to consider the plaintiff's absenteeism, such

evidence was presented at the hearing and argument assumed an entire day would

be missed for each appointment); *S.D. v. Saul*, No. 19-4048-SAC, 2020 WL 774098,

at *8 (D. Kan. Feb. 18, 2020) ("The court has examined the record and acknowledges

plaintiff's many medical appointments. . . . [M]any of the appointments appear to be

of the type which could be scheduled to accommodate work; for instance, diabetes

followups, medication refills or reviews, and post-op checks. . . . Upon review, the

court concludes that the ALJ did not commit an error in the step four analysis by

failing to properly consider the evidence of plaintiff's medical appointments.");

*Leaverton v. Colvin*, No. 11–CV–778–FHM, 2013 WL 1316901, at *3 (N.D. Okla.

March 29, 2013) (rejecting argument that ALJ's hypothetical was "imprecise

because it did not account for absences from work necessary for medical treatment.

. . . Nothing in the record suggests an entire day off is necessary for each appointment

or that appointments could not be scheduled around hours of employment.").

Finally, Plaintiff contends that the ALJ erred in considering the consistency

of her subjective reports in determining the RFC. This Court's review of the ALJ's

consideration of Plaintiff's subjective reports is guided by two principles. First, such

"determinations are peculiarly the province of the finder of fact, and [the court] will

not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Second, "findings as to [subjective reports] should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (additional alteration omitted).

The ALJ concluded that Plaintiff's reported limitations were not entirely consistent with the medical and other evidence of record. With detailed discussion of and citation to the record, the ALJ noted that on the occasions Plaintiff was compliant with her medication, she showed significant improvement in the symptoms arising from her mental impairments. AR 20, 22, 23, 24. Indeed, following a period of sustained compliance, Plaintiff felt stable enough to reduce her counseling sessions from weekly to biweekly. AR 23 (citing AR 666). The ALJ also discussed the multiple instances when Plaintiff's non-compliance with medication and/or her overall treatment plan, including excessive drinking and the use of illicit substances, consistently resulted in a worsening of her symptoms, including being admitted for inpatient care. AR 21, 22, 23, 24, 29. *See Steven v. Kijakazi,* No. 20-cv-00364-SH, 2022 WL 489319, at *4 (N.D. Okla. Feb. 17, 2022) (explaining it was appropriate for ALJ to consider the plaintiff's non-compliance with treatment plan in evaluating consistency of his subjective reports (citing SSR 16-3p, 2017 WL 5180304)); *Wright v. Saul*, No. CIV-18-822-BMJ, 2019 WL 4145235, at *9 (W.D. Okla. Aug. 30, 2019) (affirming ALJ's conclusion that "Plaintiff's noncompliance

with treatment weakened the credibility of her allegations." (quotations and alterations omitted) (citing SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.")).

Similarly, the ALJ considered the multiple and extended periods of time in which Plaintiff did not seek treatment at all. AR 23-24 (noting Plaintiff sought inpatient services in July 2018 reporting that she had not seen a psychiatrist in four months and subsequently failed to seek any treatment, with the exception of a single appointment, from September 10, 2018 until August 2019). The ALJ also considered Plaintiff's reported daily activities, including but not limited to social interaction with friends and family, caring for her children, and activities in public such as shopping, bi-weekly trips to the library, and interstate travel. AR 22, 27, 28, 30.

Further, the ALJ considered the medical opinions of record relating to Plaintiff's potential limitations. A state reviewing psychologist concluded that Plaintiff was mildly limited in her ability to adapt or manage oneself. AR 26, 123. She found Plaintiff was moderately limited in her ability to understand, remember, or apply information, maintain social function, and maintain concentration, persistence, or pace. AR 26, 123, 127, 128. She further concluded Plaintiff was markedly limited in her ability to understand, remember, and carry out detailed

10

instructions and in her ability to interact with the public. AR 26, 126, 127, 128. The

psychologist also found Plaintiff was not significantly limited in her ability to

perform simple tasks with routine supervision or adapt to a work situation. AR 26,

127, 128. The ALJ noted this opinion was "consistent with the serial medical

findings, treating medical records, function reports, objective medical evidence, and

the overall longitudinal record in its entirety." AR 26. Plaintiff does not point the

Court to any evidence of record that undermines the ALJ's conclusion.

The ALJ also noted a January 4, 2017 consultative examination conducted by

Dr. Christopher Campbell. AR 27. Plaintiff contends the ALJ should not have

considered Dr. Campbell's opinion because it "was from a previous Application for

Disability . . . [and the] timing of this case was from [an] Application on November

1, 2017[.]" Doc. No. 18 at 1. However, Plaintiff claims that her disability began on

February 25, 2017, just one month after Dr. Campbell's consultative examination.

AR 480-84. Moreover, the Tenth Circuit has wholly rejected Plaintiff's argument.

In *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), the Tenth Circuit held

that "even if a doctor's medical observations regarding a claimant's allegations of

disability date from earlier, previously adjudicated periods, the doctor's observations

are nevertheless relevant to the claimant's medical history and should be considered

by the ALJ." *See also Farrell v. Colvin*, No. 2:15-CV-09229-JTM, 2016 WL

4128452, at *5 (D. Kan. Aug. 3, 2016) (explaining that records from before amended

onset date "are nonetheless part of Plaintiff's case record and should be considered"); *cf.*, *Schoonmaker v. Berryhill*, No. CIV-16-1145-R, 2017 WL 4422597, at *4 (W.D. Okla. Oct. 5, 2017) (citing *Hamlin*, finding reversible legal error where ALJ ignored mental health opinion pre-dating alleged onset date, and where ignored medical opinion did not involve "some sort of discrete easy-cure event that the ALJ would have necessarily discounted in her later disability determination"); *Austin v. Colvin*, No. CIV-13-467-SPS, 2015 WL 1209384, at *4 (E.D. Okla. Mar. 17, 2015) (finding reversible legal error where ALJ ignored medical opinion issued during period prior to the plaintiff's alleged onset date).

The ALJ accurately summarized Dr. Campbell's report as follows:

[Plaintiff] arrived alone and on time for her appointment, having driven her car about 15 miles to the office. She denied any problems driving short or long distances. She admitted drinking "socially," but denied any history of alcohol abuse. She admitted that she smokes approximately 10 to 15 tobacco cigarettes per day, but denied any current marijuana use since she started taking medications. She denied any problems with her prescription medications. When asked why she was applying for disability, she replied, "*I haven't worked in a year and it was suggested to me*," (emphasis added). The claimant was observed to be appropriately dressed in clean causal clothing with adequate grooming. She had normal gait and appeared with adequate energy. Her posture was relaxed and she was cooperative, polite, and pleasant. On examination, the claimant was alert and oriented times four. She was attentive with pleasant mood, calm affect, and normal speech. She had an adequate fund of information. She had clear, coherent, linear, and goal directed thought processes with practical judgment. She did not demonstrate or report any problems with impulse control. Dr. Campbell found the claimant did not appear to be a reliable historian. For example, he noted the claimant advised him that she had been hospitalized on one occasion for three days in November 0f 2016, at

Silver Linings. In contrast, he noted the claimant advised her counselor that she had been inpatient for two weeks at age fifteen. Although the claimant advised Dr. Campbell that she had attempted suicide "at least once a year since I was 15," Dr. Campbell noted the claimant reportedly had been to the emergency room only twice for suicide attempts: once at age 15 and once in November of 2016, and she made no mention of yearly suicide attempts to her counselor. Although the claimant did not report any history of self-harm or history of abuse to Dr. Campbell, he noted she advised her counselor of self-mutilative behaviors including cutting and tattooing, as well as rape by a neighbor at age 19. Similarly, he noted the claimant did not report any history of hypomanic episodes or buying sprees, and that she drinks socially, but denied any history of alcohol abuse. In contrast, he noted the claimant advised her counselor of having episodes of mania lasting one week, occurring two or three times per year, as well as references to grandiosity, buying sprees, and getting drunk excessively. Of importance, Dr. Campbell reviewed the intake form the claimant completed prior to her examination upon which she endorsed every depressive symptom, but did not endorse a single manic symptom. Although the claimant did not report a past history of an abusive marriage[] to Dr. Campbell, he noted the claimant advised her counselor of a six-year marriage. Despite these inconsistencies, Dr. Campbell reached the diagnosis of major depressive disorder, recurrent, moderate. When asked about these inconsistencies at her hearing, the claimant testified that she has trouble with her memory and essentially that she cannot be expected to remember everything in detail.

. . .

[Dr. Campbell concluded] the claimant is capable of understanding, remembering, and managing instructions and tasks. He also opined that she is capable of sustaining work-related mental activity. This opinion is found to be persuasive and given great weight as supported by the findings contemporaneous examination and as being consistent with the evidence in its entirety.

AR 20-21, 27 (citation and footnote omitted).

The ALJ also considered "an unsigned examining clinical psychologist [opinion]" submitted by Plaintiff's representative. AR 27.[1] As the ALJ noted, the psychologist concluded:

> [Plaintiff] is able to achieve satisfactorily in the regular work setting. This opinion is found to be persuasive as supported by the contemporaneous intelligence testing upon which she derived the Full Scale IQ score of 102, placing her in the average range of intelligence testing. This is also supported by her results on the Wide Range Achievement Test [], upon which her reading, writing, and math skills placed her post high school above the 12.9 grade level, falling within the average to superior range.

AR 27 (citation omitted).

This psychologist also stated that Plaintiff would need "adequate support to maintain a full time job." AR 934. Plaintiff interprets this to mean "vocational support" in the form of extra supervision or a job coach. Op. Br. at 7. She relies on this interpretation to argue the ALJ should have included such requirements in the RFC. *Id.* The Court does not find Plaintiff's interpretation availing. However, presuming, without deciding, that the psychologist intended to conclude that Plaintiff required extra supervision or a job coach, this presents a conflict in the

---

[1] "[A] lack of signature [on a medical opinion] is typically of concern only where it is 'impossible to identify an unsigned opinion as a medical opinion' coming 'from an acceptable medical source as required by the regulations' or where 'it may be impossible to identify the period to which an undated opinion applies in determining the onset date of an impairment or of disability.'" *Baca v. Berryhill*, No. 1:17-cv-00726-KRS, 2018 WL 4521944, at *2 (D.N.M. Sept. 21, 2018) (quoting *Lyons v. Astrue*, No. 11-cv-246-TLW, 2012 WL 4006007, at *9 (N.D. Okla. Sep. 12, 2012) (additional quotations omitted)). These concerns are not present here.

record between medical opinions. The ALJ acted within his province to resolve any

such conflict. *Boss v. Barnhart*, 67 F. App'x 539, 542-43 (10th Cir. 2003) (citing

*Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)).

Following the ALJ's in depth discussion of the record, he stated the following

conclusions regarding the consistency between Plaintiff's subjective reports and the

record.

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because of reported improvement when compliant with outpatient mental health care and the ability to perform various activities as she describes to her mental health providers. Further, her allegations are unsupported by her largely unremarkable mental status findings on serial examinations. The claimant alleged having a lack of funds to explain her lack of medical attention and medications. She offered no clear answer why the money used to buy cigarettes and marijuana, as admittedly used by both the claimant and her significant other, could not be used instead to purchase medications. Furthermore, even if the claimant cannot afford private care, treatment is available through emergency rooms and charitable organizations; however, there is no evidence she has pursued the same even though her vocational rehabilitation counselor provided her with contact information. The claimant testified as to her ability to go out in public shopping, to travel, and to use electronic devices for testing, Facebook, and cruising the internet. She visits friends and family, she visits her children. She makes meals and does some household chores.
>
> Based on the foregoing, it is found that [the RFC] is supported by the claimant's generally intact examination and mental status findings when compliant with medical care. In order to account for functional deficits related to the combination of the claimant's mental impairments, the [RFC] reflects simple work with limited social interaction. The evidence of record in its entirety supports the finding that the claimant is able to perform a wide range of medium unskilled

work with occasional social interaction as described in the [RFC] above.

AR 29-30 (footnotes omitted). In light of the ALJ's extensive discussion of the record and his conclusions thereafter, it is clear the ALJ's RFC is closely linked to the evidence of record and is supported by substantial evidence.

In reviewing Plaintiff's arguments and the record as a whole, Plaintiff does not cite to any medical evidence or opinions the ALJ failed to consider. Moreover, the ALJ's findings with regard to her subjective reports and his RFC are clearly "closely and affirmatively linked to substantial evidence[.]" *Kepler*, 68 F.3d at 391. Thus, Plaintiff merely disagrees with the conclusions drawn by the ALJ. Plaintiff's mere disagreement with the ALJ's conclusion provides no basis for this Court to reweigh the evidence in the manner she implicitly requests. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Therefore, this claim of error is denied.

V. VE Hypotheticals

Plaintiff also contends the ALJ erred by not including greater mental limitations in the hypothetical presented to the VE, specifically that she would need to miss more than one day per month of work. Op. Br. at 12-13. "An ALJ, however, is not required to include limitations 'not accepted by [her] as supported by the record' in her hypothetical question." *Jeffries v. Soc. Sec'y Admin.*, 358 F. App'x 25, 32 (10th Cir. 2009) (quoting *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995)). For reasons the Court has already stated, the ALJ permissibly rejected the additional

restriction of excessive absences in the RFC. He, therefore, did not err in omitting

this restriction from his hypothetical question to the VE.

## VI. Conclusion

Based on the foregoing analysis, the decision of Defendant is affirmed.

Judgment will issue accordingly.

ENTERED this __22nd__ day of March, 2022.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE